SCANNED AT LoCI and E-Mailed
To USDC OHSD on 12/15
2025 by D Paddock
re-scan, 12/13 went
to Suprem court of ohio
No. of Pgs. 18

SCANNED AT LoCI and E-Mailed
To USDC OHSD on
2025 by
No. of Pgs. 18

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CURTIS ANTHONY MOODY**
**Plaintiff,**

v.

**JOUSHA BLANKLEY et al**
**Defendant.**

Civil Action 3:25 –cv-289
**Judge Thomas M. Rose**
**Magistrate Judge Chelsey M. Vascura**

## PLAINTIFF RESPONSE TO MAGISTRATE'S REPORT AND RECOMMENDATIONS

Now comes Curtis A. Moody "Plaintiff" in the civil 1983 action for the wrongful death of [h]is son Brian Moody. At this time. Out of the abundance of caution as the Magistrate R.R. recommends. Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R. Civ. 8(a)(2). Thus, Rule 8(a). imposes legal and factual demands on the authors complaints.

### MEMEORANDUM IN SUPPORT

1. Relating back to the original complaint the plaintiff, has stated claims upon which relief can be granted and articulated those claims with common sense and established the Constitutional violations related to the offense pursuant to Federal Rule of Civil Procedure Rule 8(a) (2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In order to give the defendants fair notice of what…. claim is and the grounds upon which it rest

Respectfully submitted / pro se
Plaintiff, Curtis Moody # 720-836
L.O.C.I.
P.O. Box 69 London, Ohio 43140

2

## CLAIM 1: <u>USE OF EXCESSIVE FORCE VIOLATION OF THE FOURTH AMENDMENT</u>

On June 29, 2024 in Dayton Ohio, Montgomery County on the 500 block of Negley Ave two officers Joshua Blankley, and John Doe, as they arrived and began patrolling the 500 block of Negley avenue which is a residential neighbor, a perfect view of a small river, nice houses, officers made statement during the aftermath of killing this sixteen year-old kid that were published on channel 2 news that they were patrolling certain areas because of pop-up /block party where kids would gather and hang-out but it still remains a mystery as to why they targeted Moody.

Upon arrival, out of everyone socializing they singled out Moody, and Observed sixteen-year-old Brian Moody, walking south away from people where they were gathering enjoying the hot summer evening these two officers mention above first Blankley, exited the cruiser after a brief statement made to officer John Doe inside the patrol care "that this is the guy we want to talk to." It is important to note Moody is a minor just sixteen and officers should obtain consent to question him or contact parents.

More importantly Moody, before was threaten and accosted by Blankley, he was visually seen walking minding his business **<u>unarmed</u>** and **<u>was not a suspect</u>** of any crime there hadn't been any radio dispatch of a description of any violence on the 500 block of Negley Ave. and it should be very clear that Moody, wasn't a threat to the officers or the community when he was targeted and gun-down by police whom shot him in his back.

In this case very briefly, an officer use of excessive force violates the U.S. Const. amend. IV. The general right to be free from excessive force is clearly established, it has long been established that individuals have a right not to be shot unless they are perceived to pose a threat to the pursuing officers or others. Ohio law does not immunize acts or omissions done with malicious purpose, in bad faith, or a wanton or reckless manner. Ohio Rev. Code Ann § 2744.03(A)(6)(b).

The Fourth Amendment prohibits "unreasonable searches and seizures [.] United States Constitution Amendment IV. [A]n officer seizes a person when he uses force to apprehend [them]. See

3

Torres v. Madrid, 592 U.S. 306,309, 141 S. Ct. 989, 209 L.Ed.2d 190(2021). Such force must be reasonable and cannot be excessive. Steward v. City of Euclid, 970 F.3d 667,672(6th Cir.2020).

Dayton Police officers, Joshua Blankley, and John Doe, use of deadly force violated sixteen-year-old Brian Moody's Fourth Amendment rights. Blankley created and enticed a situation by yelling at Moody, saying hey come here. Moody, answered for what? Blankley, responded "if you run." "you're going to get shot." Blankley, knowing the laws of the Constitution also being an active member of law enforcement he understands if a person is actively resisting arrest or attempting to evade arrest it almost gives a green light for use of forces. Graham v. Connor, 490 U.S.386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443(1989). This inquiry turns on (1) the severity of the crime at issue. (2) whether the individual posed an immediate safety threat; and (3) whether the individual was actively resisting arrest or attempting to evade arrest.

(1) There was no crime where the severity would be an issue

(2) Moody was observed exiting the area and posed no threat immediate threat to anyone.

(3) Moody only ran out of fear of being shot by police he was threaten if you run your getting shot, he wasn't committing a crime that caught red handed and then resisting arrest or attempting to evade arrest it is clear he was just walking and was targeted.

Officers made several contradicting statements that during the chase Moody, turned an pointed a firearm they partial video aired by Dayton daily news channels 2 and 7 both shows Moody, running and never turning around at all. An individual's possession of a gun does not create a threat that justifies the use of deadly force. Jacobs v. Alam,915 F.3d 1028, 1040 (6th Cir. 2019); see also Thomas v. City of Columbus, 854 F3d 361,366(6th Cir.2017) ("[W]e do not hold that an officer may shoot a suspect merely because he has a gun in his hand.") . And where a dispute of material fact exists pertaining to whether the suspect was pointing a gun at someone, we deny qualified immunity and permit the case to proceed to a jury. Hicks, 958 F.3d at 436(collecting cases). It has long been established in this circuit that individuals have a right no to be shot unless [they are] perceived to pose a threat to the pursuing officers or to others[.] See Yates v. City of Cleveland, 941 F2d 444, 447(6th Cir. 1991) (quoting Robinson v. Bibbs,840

4

F.2d 34,351(6th Cir.1988)). If Moody did not turn and point a gun at Blankley and Doe, they violated Moody's clearly established right to be free from deadly force, as a reasonable officer in those officers' shoes.

## CLAIM 2: PAIN AND SUFFERING FORM DEPRIVATION OF LIFE 42U.S.C.§1983

On June 29, 2024 at 8:00pm. On the 500 block of Negley Ave. Dayton Ohio, Montgomery County Dayton police officer's Joshua Blankley, and John Doe knowingly and intentionally shot Moody and that action was done under the color of state law and federal law.

I t should be noted that Moody, survived his injuries for a discernible period of time before his demise and experienced during that period of time survival conscious pain and suffering. It was a conscious pain and suffering experienced by Moody, during interval between the actual injury caused by police shooting him in the and the ultimate death and common sense is clear that Moody, suffered conscious pain and suffering and emotional distress while laying shot in his back bleeding out and (DPD) officer's Blankley and Doe should be held accountable for their outrageous character which was extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Moody has suffered substantial psychological injures from the excessive deadly force and seizure of [h]is son being killed by police and the facts, as found, did not justify the use of deadly force under the Fourth Amendment. Id., at 246.

It was clearly established in 2002 that psychological injures can be sufficient to state a Fourth Amendment excessive force claim during the aftermath, of Moody son's death he has experienced pain and suffering emotional distress emotional psychological distress, including grief for which he began visiting mental health therapy within the institution and anxiety and fear that another disaster will strike because cops had his other son in custody several hours after killing another child.

This long-term emotional injury has affected my ability to function in everyday life this pain and suffering was caused by DPD, officer's killing my six teen year old son deliberately and

I have lost 70 pounds and have trouble sleeping and I am paranoid and scared my other children will be targeted by these same police officers'

## CLAIM 3: A MONELL CLAIM AGAINST THE CITY OF DAYTON FOR FAILURE TO TRAIN AND INVESTIGATE AND SUPERVISE 42 U.S.C. §1983

Here, it is well established that a municipality may be held liable under §1983 but only for its acts Monel v. Dept of Social Serv. 436 U.S. 658,690-91 89 S.Ct.2018, 56 L.Ed.2d 611(1978). A Municipality acts through custom and policy. at 694; City of Canton v. Harris, 489 U.S. 378, 385 109 S.Ct. 1197 103 L. Ed.2d 412(1989). Custom or policy can take form of (1) official policy or legislative enactments, (2) decisions or ratifications of final decision makers, (3) inadequate training or supervision or (4) a custom of acquiescence to or tolerance of rights deprivations. Jackson v. City of Cleveland, 925 F.3d 793, 828(6th Cir. 2019). Moody must establish the existence of a municipal custom or policy, a constitutional violation (addressed above). And, a cased link between Two City of Canton,489 U.S.at 385

DAYTON POLICE DEPARTMENT GENERAL ORDER "USE OF FORCE" 3.03-2 REV 05/25

KAMRAN AFZAL-DIRECTOR AND CHIEF OF POLICE Policy Statement

Cites the controlling law of Graham v. Connor, 490 U.S.386, See page 1. Paragraph three this use of force policy had failed to articulate thoroughly that the use of force deadly or not is a Fourth Amendment Constitutional rights violation and the city can be held liable for inadequate training or failing to supervise which is so vitally important because police have essential duties to serve and protect and follow policy and the United States Constitution.

Excessive and unjustified force is commonly tolerated by the City of Dayton. It has become repetitive, routine, and the city commissioners and mayor have received several complaints from the public community I regards to USE OF FORCE.

6

To recite the actual ratio would speak volumes of the failure to properly train and/or supervise the field officers the unjustified and unreasonable evolving uses of force indicates a pattern of escalation in the statistics as seen, 2023 47% to 2024 188%, to wit, this year, 2025, is on track to exceed the previous two years.

The city of Dayton has put for the month after month, see Ex A, 1-3 to clarify the use of force definitions and policy on the use and restrain of this, but little if nothing, has been done to stop the egregious behavior and violations of everyday citizens guaranteed Constitutional rights, and they continue to suffer physical harm and death at the hands of poorly trained field officers.

Kamran Afzal-Director and Chief of police 3.03-2-page 11of 15

H. Use of Force Prohibitions

1. officers may not use or threaten to use force for the following reason:

**- To prevent person from resisting or fleeing in the future**

- Against person who are handcuffed, and /or restrained and complaint where their actions present no substantial risk of escape, injury, and /or property damage.

As one can see the evidence on its face establishes that Moody, was running away from the officers was not brandishing any weapons, and posed no physical or immediate threat to anyone, let alone the officers this is how the definition of excessive use of force comes into play pursuant to the City Commissions convened to establish the definition of and the excessive use of force.

The City of Dayton Commissioner, Mayor and Dayton Police Department have had all agreed on a working order for the use of force to be followed by **all** officers of the Dayton Police Department. Not only does this give a working definition of the use of force, but its application in the field to be adhered to under any and all circumstances. See A, 1-3.

7

Out of the abundance of caution, please allow articulation as to how the inadequate training and lack of supervision can lead to liability of the City of Dayton.[1]

Officers appear to be inadequately trained and /or supervised because the results of the results of the interactions with Moody, the City of Dayton has been on notice since 2020-2025 that the use of force has been an ongoing issue with the police department and the city appears to have accosted the department for their actions.

Officer Blankley and Doe was inadequately trained in the use of force, and deadly force, the use of body camera operations, and taser use which is obvious from disciplinary actions and these typical forms of misconduct indicates how Dayton, Ohio Montgomery County police department officers continuously use deadly unconstitutional force.

The inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of Moody, in which those officers came into contact this inadequate training and lack of supervision and the failure of the city to make sure their police officers received proper training to protect and serve the public is the moving force behind the unconstitutional violations in which in order to establish the liability of the a government body under 42U.S.C.S.§1983.

Just because the city of Dayton and commissions decide to appeases the public by presenting a policy change but fails to make sure its changes are finalized to protect the public and be sure the officers not only protect and serve but follow and understand the Constitution

---

[1] KAMRAN Afzal -Director and Chief of police 3.03-2-page 11of 15.
H. Use of Force Prohibitions
1. officers may not use or threaten to use force for the following reasons:
-To prevent persons form resisting of fleeing in the future
-Against person who are handcuffed, and /or restrained and complaint where their actions present no substantial risk of escape, injury, and /or property damage.

8

and guarantees for the public and understand what laws are broken and whom is liable for unconstitutional breach of policy.

Plaintiff, has adequately alleged that an agent of Montgomery County, while acting under color of state law, violated his son Brian Moody's rights, by deliberate indifference to his serious medical needs after shooting him in the back which this unconstitutional seizure and the previous policy or custom of the county was the "moving force" behind the alleged Constitutional violation. Monell , 436 U.S. at 694.

Such a policy or custom may consist of: (1) the municipality's legislative enactments or official agency policies;(2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. See Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir.2005).

Here, the Montgomery County defendants promulgated certain customs, policies and practices that caused the violation of his constitutional rights. See 2024 use of force policy resulted in the deprivation of his Constitutional rights. More importantly, since 2020 until 2025 the City of Dayton has been aware and identified that changes and action should be taken to ensure this use of force policy is Constitutionalized but the city official with final decision-making authority has failed to properly accost those in charge and this action was the moving force behind the injustice.

The Montgomery County has a pattern a custom of tolerance or acquiescence of federal rights violations and because the county is aware that failure to train and supervise its employees concerning use of force, they should be held liable because those officers were deliberately indifferent to Moody's medical needs after they seized him unconstitutionally. City of Canton v. Harris, 489U.S.378, 388, 109 S.Ct.1197, 103 L. Ed. 2d 412(1989). Proving deliberate

9

indifference typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures. Miller v. Calhoun Cty., 408 F.3d 803,815(6th Cir.2005). See also Burgess v. Fischer, 735F.3d 462, 478(6th Cir. 2013)("A failure-to-train claim… requires a showing or prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury".)( internal quotation omitted);Connick v. Thompson, 563U.S. 51, 62, 131 S. Ct. 1350,179 L. Ed. 2d 417(2011).(holding that, in order to succeed on a failure to train claim a plaintiff must usually show "[a] pattern of similar Constitutional violations by untrained employees.")

**Plaintiff has attached evidence that the City of Dayton has been aware of the pattern of use of force issues and although they have tried to correct since 2020 there has been several incidents that they are the "moving force" behind the Constitutional violations which could have been prevented had those in charge taken corrective measures. See policy and 2020-2025 attempts to correct a policy that the "City" knew was the moving force behind the violations of civilian's rights.**

The Sixth Circuit has held that a municipality's failure to act in the face of obvious Constitutional violations is property treated as the cause of subsequent, similar violation Leach, 891 F.2d at 1248. A pattern of similar Constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty ., 520 U.S.., at 409, 117S.Ct.1382.137L.Ed.2d626.
See Cases:
Searcy v. City of Dayton 38F3d 282
Wade v. Montgomery Cty., 2018U.S. Dist.
Palma v. Johns, 2022 U.S. Dist. LEXIS 160649
Scott v. City of Dayton, 2007 U.S. Dist. LEXIS 47031

10

## CLAIM 4: A DELIBERATE INDIFFERENCE TO MEDICAL NEEDS 42U.S.C.§1983

Dayton Police officers Joshua Blankley, and John Doe, were deliberately indifferent to the decedent serious medical needs after shooting. Specifically, officer's mention above delayed an unjustifiable amount of time before obtaining care to individuals who have been injured during apprehension by police. City of Revere v. Mass. Gen. Hosp. 463 U.S.239,244 .103 S.Ct.2979, 77 L. Ed. 2d 605(1983). To prevail on a §1983 claim alleging a violation of that right a plaintiff "must satisfy both an objective and a subjective inquiry." Bozeman v. Orum, 422 F.3d 1265,1272(11th Cir.2005).

Here, Mr. Moody has presented evidence satisfying the first two prongs of the deliberate indifference test because the evidence shows that each officer knew Moody has suffered gunshot wounds are obvious, the evidence that each officer knew Moody, had been shot is sufficient to establish that each officer has subjective knowledge of the substantial risk of serious harm to Moody, See Farmer v. Brennan, 51 U.S.825,842, 114 S. Ct. 1970, 128 L.Ed.2d 811(1994). Third prong officers disregarded the risk of serious harm, and began trying to crowd control causing an on-scene nurse to recognize the delay and began rendering aid to the victim. Fourth prong officers conduct amounted to more than gross negligence because next to none medical care was provided from officers and that act was deliberate and indifferent by purposely delaying treatment to the medical need this unconstitutional delay is Constitutionally intolerable.

McElligott v. Foley,182 F.3d 1248,1255 (11th Cir.1999). as this Court has explained, the "[d]eliberate indifference to a prisoner's serious medical needs violates the Eight Amendment because denying or delaying medical treatment is tantamount to unnecessary and wanton infliction of pain.

11

However, on the other hand, this negligence was cruel and unusual punishment and it is clear Moody, was laying on the ground bleeding and critically injured and officers failed to render medical care and delayed calling for assistance as well.

**CLAIM 5: THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CONDUCT WAS OUTRAGEOUS 42U.S.C.§1983**

To prevail on a claim of Outrage, or intentional infliction of emotional distress, the plaintiff must show (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff if emotional distress.

In this case, (DPD) officer Joshua Blankley, specifically, his conduct was outrageous and intentional and it is apparently obvious that "Mr. Moody father, of the deceased would experience emotional distress and mental anguish because of Blankley, reckless disregard of the probability of causing the deceased and Mr. Moody emotional distress by killing his only son.

1. To verbally threaten Moody, the deceased, for no apparent reason "if you run." "You're going to get shot." Is extreme and outrageous conduct by this officer and with the intentions of causing, or reckless disregard of the probability of causing, emotional distress or mental anguish.

2. Moody, definitely "suffer[ed] severe or extreme emotional distress because why would he be threatening to shot Moody for walking down the street minding his business no probable cause no calls from dispatch or calls from the community giving a description of any assailant of a crime.

3. Then this officer actually shooting and killing Moody, while he is visually seen by the officer unarmed and without probable cause and actual and proximate causation of the emotional distress by engaging in outrageous conduct.

**CLAIM 6: FAILURE TO INTERVENE 42U.S.C.§1983**

12

Dayton Police officer "John Doe" violated §1983 by failing to intervene and prevent Moody, death. An officer who is present and fails to intervene to prevent other law enforcement officers form infringing the Constitutional rights of citizens is liable under §1983.If that officer had a reason to know (1) that excessive force was being used, (2) that a citizen was being unjustifiably arrested ,or (3) that any Constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm occurring .See Abdullahi v. City of Madison , 432 F.3d 763.764(7th Cir.2005).(quoting) Yang v. Hardin 37 F.3d 282,285(7th Cir.1994).(emphasis in original). The seventh Circuit has explained that a realistic opportunity to intervene may exist when an officer could have called for help, or when an officer could have cautioned the officer using excessive force to stop. Powell v. City of Berwyn. No. 13-cv-1859,2014 U.S. Dist. LEXIS 131365. At *23 (N.D.111.Sept. 19,2014). (quoting) Abdullahi. 432 F.3d at 774); See also Lanigan v. Vill. Of East Hazel Crest, 111.110 F.3d 467, 478(7th Cir.1997). ("whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the officer is generally an issue for the trier of fact unless considering all the evidence a reasonable jury could possibly conclude otherwise.

Here, officer Blankley, accosted Moody, a non-suspect which he knew at the time and verbally threatened him "if you run." "You're going to get shot." Then shot Moody, in his back while he was running away.

Upon arrival to an alleged call of a block-party / gathering at a vacant house officer Blankley, and Doe, per Body camera and cruiser camera footage upon arriving while seated inside the patrol car the driver Blankley, exits first Doe, seconds later Blankley, yells out at Moody, in which is minding his business walking south away from officers and civilians.

13

Officers Blakley says "hey come here want to talk to you." The teenager after he recognizes he was being accosted from behind Moody, then relied for what Blankley, replies "if you run." "You're going to get shot." "Despite officers Doe's, realistic opportunity to intervene and prevent the shooting death of Moody, a sixteen-year-old seen visually unarmed Blankley, runs behind Moody, and shoots and kills Moody, and Doe and Blankley, never attempted to attend to Brian Moody's emergency needs as he laid dying bleeding on the ground.

More importantly, Doe, could have prevented Moody's death by deploying his taser. He could have intervened by accosting his fellow officer obviously observing Moody was unarmed which would be unreasonable to use deadly force in violation of the Fourth Amendment to the United States Constitution. But, Doe, actively participates firing his service weapon at Moody while he was down on the ground.

## CLAIM 7:  ASSAULT AND BATTERY 42U.S.C.§1983

The element of a cause of action for assault are (1) Defendant acted with intent to cause harmful or offensive contact ,or threaten to touch plaintiff in a harmful or offensive manner;(2) Plaintiff reasonably believed she or he was about to be touched in a harmful or offensive manner and reasonably appeared to plaintiff that defendant was about to carry out threat;(3) Plaintiff did not consent to defendant conduct; (4) Plaintiff was harmed and (5) Defendants conduct was a substantial factor in causing plaintiff harm.

In the present case, Dayton Police officer Joshua Blankley, (1) This officer's actions was intentional and he attended to cause physical harm which was obviously apparent because he carried out his threat of shooting Moody, if he ran knowing and visually seeing he was unarmed.

14

(2) Moody had reasons to believe the police officer would harm him because this officer verbally threatens him. "If you run. You're going to get shot". (3) Moody did not consent to being assaulted and battery by police. (4) Moody was harmed and died as a result of his injuries from police shooting him. (5) Dayton Police officer Joshua Blankley's conduct was a substantial factor in causing Moody's harm and this officer's outrageous character was extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

## CLAIM 8: LOSS OF PARENTAL CONSORTIUM 42U.S.C.§1983

A parent has a right to maintain a loss of consortium action against a third-party tortfeasor who negligently injured the parent's minor child "consortium" can include a loss of society, companionship, comfort, love. and solace between parent child.

Regardless of who suffers the physical injury (parent or child) the other member of the parent-child relationship may suffer loss of the consortium of the injured victim as a result a minor child also has a cause of action for loss of parental consortium to recover for a lost of society companionship, affection, comfort, guidance, and counsel.

In this case, Curtis Moody the biological father of the decedent has suffered the lost of loss of society, companionship, comfort, love. and solace between parent child and affection, comfort, guidance, and counsel and loss of consortium his son Brian Timothy Moody, was his only boy he was just sixteen years-old and was loved very deeply he was a very good child a football and basketball star and absolutely didn't have a criminal record he was skittish of the society he lived in because of the violence in the City of Dayton but this child was an awesome young-man and didn't deserve to be terminated by the hands of reckless police officers because of mere speculation and mis judgement of stereotype and discrimination.

15

### CLAIM 9: OHIO WRONGFUL DEATH ACT. Ohio Rev.Code Ann.§ 2125.02(B)(3)(b)

Wrongful death statues permit survivors to sue when a killing violated their decedents Constitutional rights the court has held that. § 2125.02 (B)(3)(b). provides for the persons permitted as plaintiff to claim loss of consortium as a compensable loss under the wrongful death statue.

Provides that a wrongful death award may include loss of the society of the decedent including loss of companionship, care, assistance, instruction, training, and education suffered by the surviving spouse, minor children, parents, or next of kin.

In the case at bar, there is ample evidence that the decedent experienced conscious pain and suffering prior to his death and officer's Blankley and Doe acts were with malicious purpose in bad faith, or in a wanton or reckless manner.

The standard for recklessness employed by Ohio courts holds that the actor's conduct is in reckless disregard of safety of others if such risk is substantially greater than that which is necessary to make its conduct negligent the Ohio Supreme Court has defined reckless conduct as conduct characterized by the conscious disregard of r indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct (Restat 2d of Torts, § 500).

1. Loss of support from the reasonably expected earning capacity of the decedent.

2. Loss of service of the decedent.

3. Loss of the society of the decedent including of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent.

4. Loss of prospective inheritance of the decedent's heirs of law at the time of the decedent's death.

5. The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of decedent,

### CLAIM 10: OHIO SURVIVAL ACTION OHIO REV.CODE §2305.21

Here, as the biological father of the deceased Brian Moody "and his only personal representative" A decedent's personal representative in a survival action, may recover damages for the decedents pain and suffering upon a showing that the decedent was "conscious" of his pain and suffering prior to death. See Flory v. New York Central rd. Co. 170 Ohio St.185,189,163N.E.2d 902,905, (1959). See also Jones, 534 F.2d at 1213.

Physical or bodily pain and suffering in consequence of a wrong occasioning an injury to the person is a proper element of damages. But allowance can be made only for pain during the time that the injured person is conscious, and damages for pain during the time that the injured person is unconscious are not allowable since one cannot experience pain and suffering while unconscious no recovery can be had for pain and suffering endured by one fatally injured by the negligence of another of the person is rendered unconscious at the instant of the injury and dies of such injuries without ever having regained consciousness.

Briefly, it should be noted that the deceased survived his injuries for a discernible period of time before his demise and experienced during that period of time survival, conscious pain and suffering experienced by the deceased during intervals between injury and ultimate death.

This was evident pursuant to the off-duty nurse who at the scene administered care to the decedent at the time of the shooting, and until his death. This will be evident in the discovery

17

phase of this action, and / or during the evidentiary hearing. As was asked for in the tile of this action it will be necessary for this court to discern all evidence to seek the truth of this matter.

In doing so, it will be proven the suffering that Mr. Moody suffered at the hands of the officers and sheer neglect of their depraved indifference.

This plaintiff asked pursuant to U.S.C.S. Fed Rules Civ Proc. 34, for the police to produce the investigative reports and witnesses' statements of the off-duty nurse who administered care to Moody, at the scene this information is material and germane to the case at bar, as it gives first hand testimony to the pain and suffering experienced by Mr. Moody in his dying moments. Also Pursuant to U.S.C.S. Fed Rules Civ. Proc. 26, motion for discovery also shall be satisfied, to wit, will provide additional witness statements that could collaborate the assertions made herein.

## CONCLUSION

The plaintiff has followed the Magistrates judge's order a complied with Federal Rules of Civil Procedures 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what … claims is and the grounds upon which it rests.

And plaintiff prays that all claims proceed to discovery stage.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion response to magistrate report and recommendations was forwarded by regular U.S. mail to the office of the United States Federal Southern Western District Court this _13th_ day of _December_, 2025.

/s/ _Curtis A. Moody_ #720836

RESPECTFULLY SUBMITTED,

/s/ _Curtis Moody_

P.O.BOX 69 LONDON, OHIO 43140
LONDON CORRECTIONAL INST.